UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUSIC WITH MAR., LLC,

      Plaintiff,

vs.                           Case No.

MR. FROGGY'S FRIENDS, INC.
and KATRINA WEBSTER,

      Defendants.

_____/

<u>**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**</u>

COMES NOW Plaintiff MUSIC WITH MAR., LLC ("Plaintiff"), by and through its attorneys, and for its Complaint against Defendants MR. FROGGY'S FRIENDS, INC. and KATRINA WEBSTER ("Defendants"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

1. This is an action for infringement of Plaintiff's federally-registered trademark "Music with Mar." under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), for Defendants' intentional infringement of Plaintiff's copyright in Plaintiff's Copyrighted Work[1], and for substantial and related claims of breach of contract and defamation *per se* under the statutory and common laws of the State of Florida, all arising from the Defendants' unauthorized use of Plaintiff's intellectual property in

---

[1] The "Copyrighted Work" refers to all copyrighted materials used and owned by Plaintiff, including all works listed in **Exhibit 1** filed herewith and all items listed in the exhibits to the License Agreement attached hereto as **Exhibit 2.**

connection with the marketing, advertising, promotion, offering for sale, and/or sale of Defendants' private teaching services and related goods.

2. Plaintiff seeks injunctive and monetary relief.

3. This court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a) and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district and/or under 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this district.

5. Plaintiff MUSIC WITH MAR., LLC ("MwM") is a limited liability company formed under the laws of Florida with its principal place of business in Pinellas County, Florida. Plaintiff has one member: Maryann Harman, who is a citizen of Florida.

6. Upon information and belief, Defendant KATRINA WEBSTER ("Webster") is an individual who resides in Erie County, New York. Upon information and belief, Webster is a citizen of New York State. Upon information and belief, Defendant Webster conducts business across the country, including within the State of Florida.

7. Upon information and belief, Defendant MR. FROGGY'S FRIENDS, INC. ("MFF") is a corporation that is incorporated under the laws of New York State and has its principal place of business in Erie County, New York. Upon information and belief, Defendant MFF conducts business across the country, including within the State of Florida.

**PLAINTIFF'S BUSINESS AND INTELLECTUAL PROPERTY**

8.  Plaintiff MwM is a company dedicated to bringing quality, brain-based music and workshops to children, families, teachers and groups.

9.  Plaintiff MwM, created by Maryann Harman, is an internationally respected company dedicated to using music and movement to teach children skills they will need for a successful, happy life and to train adults on incorporating music into their lives.

10. Plaintiff MwM provides

    a.  music activities for adults and children to participate in together that will aid in the child's total development while bonding the child and adult and enhancing the adult's understanding of the importance of their involvement in these classes;

    b.  classes for families and qualified individuals to teach the classes/philosophy of MwM, so its power can touch more lives and educate those who work with children to do the same; and

    c.  workshops for groups wishing to expand their knowledge on the value of music in enhancing our lives and enriching our brains.

11. Plaintiff is the owner of valid and subsisting United States Trademark Registration No. 5052845 on the Principal Register in the United States Patent and Trademark Office for the trademark "Music with Mar." (hereinafter "the Registered Mark"). Attached as **Exhibit 3** is a true and correct copy of the registration certificate for Plaintiff's United States Trademark Registration No. 5052845 which was issued by the United States Patent and Trademark Office on October 4, 2016.

12. Plaintiff has used the Registered Mark in commerce throughout the United States continuously since at least as early as January 1, 1994 in connection with the

distribution, provision, offering for sale, sale, marketing, advertising and promotion of classes, workshops, music, and merchandise. Attached hereto as composite **Exhibit 4** are photographs of representative samples of materials showing Plaintiff's use of the Registered Mark in connection with goods and services.

13. As a result of its widespread, continuous, and exclusive use of the Registered Mark to identify its goods and/or services and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the Registered Mark.

14. Plaintiff's Registered Mark is distinctive to both the consuming public and Plaintiff's trade.

15. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the goods and services sold under the Registered Mark.

16. Plaintiff, on its own and through its licensees, distributes, provides, and sells the goods and services under the Registered Mark via in-person and internet sales.

17. Plaintiff offers and sells its goods and services under its Registered Mark to individuals and families across the world.

18. The goods and services Plaintiff offers under the Registered Mark are of high quality and based on well-supported research regarding childhood brain development.

19. As a result of Plaintiff's expenditures and efforts, the Registered Mark has come to signify the high quality of the goods and services designated by the Registered Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

20. As a result of its distinctiveness and widespread use and promotion throughout the United States and across the globe, Plaintiff's Registered Mark is a famous trademark

within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. 1125(c), and became famous prior to the acts of the Defendants alleged herein.

21. In addition to the Registered Mark, Plaintiff has common law trademark rights in the phrase "Mr. Froggy" and in several logos containing the phrases "Music with Mar." and "Mr. Froggy" (collectively "the Unregistered Marks"). Attached hereto as **Exhibit 5** are photographs of representative samples of materials showing Plaintiff's use of the common law trademarks in connection with goods and services.

22. Plaintiff has been using the Unregistered Marks in commerce within the United States consistently since their creation.

23. The Unregistered Marks are distinctive because they are arbitrary, fanciful, or suggestive and therefore inherently distinctive; and/ordescriptive with acquired distinctiveness.

24. The Unregistered Marks are protected under Section 43(a) of the Lanham Act.

25. Plaintiff's use in commerce of the Unregistered Marks predates Defendants' use of same.

26. MwM also has copyrights to the various songs and materials used in the MwM curriculum, and to the character "Mr. Froggy."

## PLAINTIFF'S RELATIONSHIP WITH THE DEFENDANTS

27. In or about 1998, Webster became a licensed instructor of MwM classes.

28. Under her original license, Webster was permitted to teach classes to children and their parents or guardians within a limited geographic area of Western New York State.

29. In or about 2017, Webster expressed interest in taking on a larger role with MwM, which would include recruiting and managing instructors who teach classes directly to families and children.

30. Webster and MwM had discussions regarding this plan, which would ostensibly place Webster as the primary person in charge of recruiting and managing instructors who teach classes directly to families and children anywhere in the world, except mainland China, while Maryann Harman would be the primary person in charge of conducting workshops which were geared toward training new instructors and other educational professionals.

31. On May 2, 2017 Webster formed the entity MFF.

32. On or about May 4, 2017, MwM, as Licensor, and MFF, as Licensee, entered into an Intellectual Property License Agreement ("the License"). A true and correct copy of the License is attached hereto as **Exhibit 2**.

33. Under the License, MFF was permitted to use and sublicense the MwM Marks (which included both the Registered Mark and the Unregistered Marks) and MwM's Licensed Program to instructors who wanted to teach MwM classes anywhere in the world, except mainland China.

34. The License made clear that MwM remained the sole owner of all of the intellectual property associated with the MwM curriculum and brand:

> 10. <u>Ownership and Use of Marks and Copyrights</u>. Licensee acknowledges that Licensor owns the Marks, any and all copyrights associated with the Licensed Program, and all rights therein and that nothing in this Agreement shall give Licensee any right, title or interest in or to the Marks or any such copyrights other than pursuant to the License. Licensee agrees that it

> will do nothing inconsistent with Licensor's ownership of the Marks or any such copyrights, and shall not claim adversely to Licensor, or assist any third party in attempting to claim adversely to Licensor, with regard to such ownership. Licensee agrees that it will not challenge the title of Licensor to the Marks or any such copyrights, or challenge the validity of this Agreement or the License granted herein. Furthermore, Licensee will not register, nor attempt to register, any trade name or trademark which, in whole or in part, incorporates or is confusingly similar to the Marks. Without the prior written approval of Licensor, which approval may be withheld by Licensor in its sole discretion, Licensee is not authorized to use the Marks in connection with any business activity unrelated to the Program.

35. Aware of the importance of protecting the reputation of her brand and the consistency of MwM classes across the board, MwM included in the License a Quality Control provision:

> 11.  <u>Quality Control</u>.
>
> (a)  <u>Acknowledgement</u>. Licensee acknowledges and is familiar with the high standards, quality, style and image of Licensor, and Licensee shall, at all times, conduct its business and use the Marks in a manner consistent with these standards, quality, style and image.
>
> (b)  <u>Compliance With Licensor Specifications</u>. Licensee shall comply with the reasonable specifications, standards and directions relating to the Licensed Program developed by Licensor with the consultation and input of Licensee, including the promotion, packaging, distribution and sale thereof, as provided from time to time by Licensor to Licensee in writing.
>
> (c)  <u>Advertising</u>. Licensee shall ensure that its advertising, marketing and promotion of the Licensed Program in no way reduces or diminishes the reputation, image and prestige of the Marks or of products sold under or by reference to the Marks (including, without limitation, the Licensed Program).

36. In or about 2019, Defendants began attempting to move the brand in a direction that MwM was not comfortable with.

37. On or about January 13, 2020, MwM sent a letter to Defendants detailing a number of ways in which MFF was in breach of the Quality Control terms of the License ("the January 13th Letter"). A true and correct copy of the January 13th Letter is attached hereto as **Exhibit 6**.

38. Defendants essentially ignored the letter and refused to make the changes requested by MwM to get into compliance with the License.

39. Plaintiff made numerous attempts to discuss and resolve these issues with Defendants, including sending a second letter to Defendants reminding them of these issues in February of 2020. Still, the issues were ignored.

40. Exasperated with Defendants' lack of responsiveness and refusal to cooperate, MwM sought legal counsel regarding the License.

41. In March of 2020, in an attempt to salvage the business relationship despite MFF's uncured breaches of the License, MwM proposed that the parties enter into an amendment to the License Agreement, which would more clearly delineate the relationships of the parties.

42. Webster, on behalf of MFF, refused to consider any amendments to the License.

43. Throughout all of this time, Defendants failed and refused to cure the breaches specified in the January 13th Letter.

44. Thus, on or about April 23, 2020, undersigned counsel for MwM sent a letter to Defendants ("the April 23rd letter"). A true and correct copy of that letter is attached hereto as **Exhibit 7**.

45. In the April 23rd letter, the undersigned informed Defendants that MFF was in breach of the License, that it had been since at least January 13, 2020, that it had failed to cure these breaches despite being given well more than the thirty-days' notice required under the License, and that MwM was therefore entitled to terminate the License.

46. However, MwM offered one more olive branch in an attempt to save the business relationship by offering to negotiate a new license agreement and move forward.

47. Counsel for MFF, Anthony Eugeni, responded to this letter on April 30, 2020, stating that MFF refused any negotiations and did not believe that there had been a "rightful termination" of the License. A true and correct copy of that letter is attached hereto as **Exhibit 8.**

48. Thus, on May 2, 2020, the undersigned sent counsel for MFF a Termination Letter, indicating that the License was officially terminated by MwM and that MFF must immediately cease and desist from all use of MwM's intellectual property. A true and correct copy of that letter is attached hereto as **Exhibit 9.**

49. By the terms of the License, this meant that any sublicenses issued by MFF to instructors would be automatically terminated as well.

50. Knowing that some of these instructors depended on their MwM classes for their income, and that numerous families would be disadvantaged if the classes stopped, MwM also sent correspondence to the instructors informing them that they could continue teaching, uninterrupted, so long as they signed a new license agreement with MwM within the next 14 days.

51. Rather than cease and desist the use of MwM's intellectual property, upon information and belief, Defendants began a campaign to disparage and defame MwM by hosting at least two online meetings with instructors telling them, among other things, that MFF was the ONLY entity allowed to license instructors, that MwM had no right to terminate MFF's license, and that MwM was just out to get money from MFF and ruin Webster's business.

52. Upon information and belief, Webster also sent text messages and emails to the instructors telling them to ignore any communication from MwM.

53. For example, on Friday May 8, 2020, Ms. Webster sent an email to one of the instructors attaching correspondence between the parties. A true and correct copy of this email is attached hereto as **Exhibit 10**. Interestingly, the January 13th letter was attached to this email with the file name "2 WEBSTER Notice of Default by Music with Mar (Jan 2020)."

54. Following termination of the License, Defendants also released a new Music with Mar. logo and branding guidelines, and launched a program with Active Campaign. The Music with Mar. logo created and used by Defendants will be hereinafter referred to as the "Infringing Mark" and is shown in **Exhibit 11** attached hereto.

55. On May 2, 2020, MwM had specifically told Defendants that it did not approve of the new logo and branding guidelines being shared or used by anyone.

56. In direct contradiction of this instruction, Defendants release the branding guidelines to the instructors on or about May 3, 2020 and advised them to use the new logo.

57. Defendants continue to operate the website www.musicwithmarclasses.com, and Instagram account with the handle @musicwithmarclasses, and at least one Facebook page and one Facebook group using the Music with Mar trademarks.

58. Undersigned counsel sent numerous emails to counsel for MFF, informing him of Defendants' infringing behavior and noting that, even if MFF was right that the License was still in effect, her disparaging comments, release of a new logo, initiation of the program with Active Campaign, and continued use of Music with Mar. on her websites and social media against the express instructions of MwM all amounted to new breaches of the License.

59. Not only did Defendants, through counsel, refuse to stop their infringing behavior, they refused to provide MwM access to the website and social media accounts utilizing the Music with Mar. trademarks and/or basic documentation to show that proper royalties had been paid under the License.

60. Attached hereto as composite **Exhibit 12** are true and correct copies of representative materials showing Defendants' use of the Registered Mark and the Unregistered Marks after the termination of the License.

61. Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' goods and services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' goods and services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

62. Defendants' infringing acts as alleged herein have resulted in actual confusion as evidenced by correspondence from various instructors who believe that Defendants own all rights to MwM's intellectual property.

63. Upon information and belief, Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's Registered Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's goods and services to the Defendants.

64. Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff and to its valuable reputation and

goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE

### Federal Registered Trademark Infringement Against All Defendants

65. Plaintiff repeats and realleges paragraphs 1 through64hereof, as if fully set forth herein.

66. Defendants' unauthorized use in commerce of the Registered Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants is in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Registered Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

68. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

69. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT TWO

### Federal Trademark Infringement Against All Defendants

70. Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

71. Defendants' unauthorized use in commerce of the Unregistered Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants is in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 43(a) of the Lanham Act.

72. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Unregistered Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

73. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

74. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT THREE

### Federal Unfair Competition Against All Defendants

75. Plaintiff repeats and realleges paragraphs 1 through 64hereof, as if fully set forth herein.

76. Defendants' unauthorized use in commerce of the Registered Mark and the Unregistered Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants is in some way affiliated with or sponsored by Plaintiff.

77. Defendants' unauthorized use in commerce of the Registered Markand the Unregistered Marksas alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

78. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

79. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

80. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

81. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys'

fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT FOUR

### Federal Trademark Dilution Against All Defendants

82. Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

83. Plaintiff's Registered Mark and Unregistered Marks are distinctive and "famous" within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

84. Plaintiff's Registered Mark and Unregistered Marksbecame distinctive and famous prior to the Defendants' acts as alleged herein.

85. Defendants' acts as alleged herein have diluted and will, unless enjoined, continue to dilute and are likely to dilute the distinctive quality of Plaintiff's famous Registered Mark and Unregistered Marks.

86. Defendants' acts as alleged herein have tarnished and will, unless enjoined, continue to tarnish, and are likely to tarnish Plaintiff's Registered Mark and Unregistered Marksby undermining and damaging the valuable goodwill associated therewith.

87. Defendants' acts as alleged herein are intentional and willful in violation of Section 43(c)(1) of the Lanham Act, and have already caused Plaintiff irreparable damage and will, unless enjoined, continue to so damage Plaintiff, which has no adequate remedy at law.

88. Plaintiff is entitled to, among other relief, an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT FIVE

### Federal Trademark Infringement Against All Defendants

89. Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

90. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants is in some way affiliated with or sponsored by Plaintiff. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

91. Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the Registered Mark and the Unregistered Marks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

92. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

93. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT SIX

### Federal Unfair Competition Against All Defendants

94. Plaintiff repeats and realleges paragraphs 1 through 55 hereof, as if fully set forth herein.

95. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants is in some way affiliated with or sponsored by Plaintiff.

96. Defendants' unauthorized use in commerce of the Infringing Mark as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

97. Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

98. Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

99. Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

100.    Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys'

fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT SEVEN

**Violation of the Anticybersquatting Consumer Protection Act of 1999("the ACPA") Against All Defendants**

101.    Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

102.    Upon information and belief, Defendants have and continue to use and maintain the domain name www.musicwithmarclasses.com, a domain name which contains the Registered Mark.

103.    Plaintiff has requested that Defendants relinquish ownership of the domain name www.musicwithmarclasses.com, but Defendants refuse.

104.    Defendants have a bad faith intent to profit from the Registered Mark in using and maintaining the domain name www.musicwithmarclasses.com.

105.    Defendants, by reason of dilution by blurring, willfully intended to trade on the recognition of MwM's famous and federally registered mark.

106.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

107.    Plaintiff is entitled to, among other relief, an order of forfeiture or cancellation of the domain name or the transfer of the domain name to the Plaintiff, injunctive relief and an award of money damages, including statutory damages of $100,000, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the

Lanham Act, 15 U.S.C. §§ 1117, 1118, together with prejudgment and post-judgment interest.

## COUNT EIGHT

### Defamation Against All Defendants

108.    Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

109.    Defendants have published numerous false and misleading statements regarding MwM and its principal, Maryann Harman in text messages and e-mail communications.

110.    These statements have subjected Plaintiff to distrust, ridicule, contempt, and/or disgrace.

111.    These statements have also injured MwM in its trade or profession.

112.    Plaintiff has suffered and will continue to suffer damages as a result of this defamation.

113.    Plaintiff does not have a sufficient remedy at law.

114.    Plaintiff is entitled to injunctive and monetary relief as a result of Defendants' defamation.

## COUNT NINE

### Copyright Infringement Against All Defendants

115.    Plaintiff repeats and realleges paragraphs 1 through 64 hereof, as if fully set forth herein.

116.    The Copyrighted Work is wholly original.

117.   As a result of direct ownership, work for hire, or assignment, Plaintiff is the owner of all rights, title, and interest, including all rights under copyright, in the Copyrighted Work.

118.   Since creation of the Copyrighted Work, Plaintiff has published, distributed, advertised, publicly displayed, and sold copies of the Copyrighted Work throughout the world

119.   Defendants have published, reproduced, publicly displayed, distributed, and/or sold identical copies and/or portions of the Copyrighted Work in commerce.

120.   Defendants have caused to be published, reproduced, publicly displayed, distributed, and/or sold, identical copies and/or portions of the Copyrighted Work in commerce.

121.   Defendant's use of the Copyrighted Work is without Plaintiff's authorization, consent, or knowledge, and without any compensation to Plaintiff.

122.   On information and belief, Defendant continues to publish, reproduce, publicly display, distribute, and/or sell identical copies and/or portions of the Copyrighted Work in commerce

123.   Defendant's identical copying and exploitation of all or portions of the Copyrighted Work was willful, and in disregard of, and with indifference to, the rights of Plaintiff.

124.   Defendant's intentional, infringing conduct was undertaken to reap the creative, artistic, and aesthetic benefit and value associated with the Copyrighted Work.

125.   By failing to obtain Plaintiff's authorization to use the Copyrighted Work or to compensate Plaintiff for the use, Defendant has avoided payment of license fees and

other financial costs associated with obtaining permission to exploit the Copyrighted Work, as well as the restrictions that Plaintiff is entitled to and would place on any such exploitation as conditions for Plaintiff's permission, including the right to deny permission altogether.

126.  On May 2, 2020 and May 8, 2020, Plaintiff's counsel sent cease and desist letters to Defendants' counsel objecting to Defendants' unauthorized reproduction, publication, distribution, public display, and sale of all or any portions of the Copyrighted Work.

127.  Defendants, through their counsel, have refused to comply with Plaintiff's cease and desist letters.

128.  As a result of Defendant's actions described above, Plaintiff has been directly damaged, and is continuing to be damaged, by the unauthorizedreproduction, publication, distribution, public display, and/or sale of all or any portions of the Copyrighted Work.

129.  Since the termination of the License, Defendants have never accounted to or otherwise paid Plaintiff for its use of any portions ofthe Copyrighted Work.

130.  Defendants' acts are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

131.  Defendants' actions constitute copyright infringement, in violation of the United States Copyright Act of 1976, as amended (the "Copyright Act"), 17 U.S.C. §§ 101 *et seq.*

132.  As a direct and proximate result of Defendants' infringing conduct alleged herein, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.

133.  Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendant's infringing conduct alleged herein, including from any and all sales of the Copyrighted Work and products incorporating or embodying the Copyrighted Work, and an accounting of and a constructive trust with respect to such profits.

134.  Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 for Defendants' willful infringing conduct for each of Plaintiff's works that Defendants have infringed, and for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

135.  Plaintiff further is entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

136.  As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law. On information and belief, unless Defendant's infringing conduct is enjoined by this Court, Defendant will continue to infringe the Copyrighted Work. Plaintiff therefore is entitled to preliminary and permanent injunctive relief restraining and enjoining Defendant's ongoing infringing conduct.

## COUNT TEN

### Breach of Contract Against Defendant MFF

137.    Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 64 above as if fully set forth herein.

138.    Plaintiff and Defendant MFF are parties to a valid and enforceable contract, to wit: The License.

139.    Pursuant to the terms of the License, it is governed by the laws of the State of Florida.

140.    Defendant MFF has materially breached the License by, *inter alia*, failing to abide by the Quality Control terms of the Agreement and by taking actions inconsistent with Plaintiff's ownership of its intellectual property.

141.    Plaintiff has complied with all of its obligations under the License.

142.    Plaintiff has been damaged as a result of Defendant MFF's breach.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1.   Granting an injunction temporarily, preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a.   manufacturing, distributing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute, provide, sell, market, advertise or promote any goods or services bearing the Registered Mark, the Infringing Mark, or any other mark that is a counterfeit, copy, simulation,

confusingly similar variation, or colorable imitation of Plaintiff's Music with Mar. mark;

b.  engaging in any activity that infringes Plaintiff's rights in its Registered Mark;

c.  engaging in any activity constituting unfair competition with Plaintiff;

d.  engaging in any activity that is likely to dilute the distinctiveness of Plaintiff's Registered Mark;

e.  making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

f.   using or authorizing any third party to use any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

g.  registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Registered Mark, the Infringing Mark, or any other mark that infringes or is likely to be confused with Plaintiff's Registered mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

h.   aiding, assisting, or abetting any other individual or entity in doing any act
prohibited by sub-paragraphs (a) through (g).

2.   Granting such other and further relief as the Court may deem proper to prevent the public
and trade from deriving the false impression that any goods or services manufactured,
sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or
circulated by Defendants are in any way approved, endorsed, licensed, sponsored,
authorized, or franchised by or associated, affiliated, or otherwise connected with
Plaintiff or constitute or are connected with Plaintiff's goods or services.

3.   Directing Defendants to immediately cease all manufacture, display, distribution,
marketing, advertising, promotion, sale, offer for sale and/or use of any and all
packaging, labels, catalogs, shopping bags, containers, advertisements, signs,
displays, and other materials that feature or bear any designation or mark
incorporating the Registered Mark, the Infringing Mark, or any other mark that is a
counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of
Plaintiff's Music with Mar. mark, and to direct all distributors, retailers, wholesalers,
and other individuals and establishments wherever located in the United States that
distribute, advertise, promote, sell, or offer for sale Defendants' goods or services to
cease forthwith the display, distribution, marketing, advertising, promotion, sale,
and/or offering for sale of any and all goods, services, packaging, labels, catalogs,
shopping bags, containers, advertisements, signs, displays, and other materials
featuring or bearing the mark Registered Mark, the Infringing Mark or any other mark
that is a counterfeit, copy, simulation, confusingly similar variation, or colorable

imitation of the Plaintiff's Music with Mar. mark, and to immediately remove them from public access and view.

4. Directing Defendants to change the name Mr. Froggy's Friends, Inc. to a name that does not contain or refer to any of Plaintiff's trademarks or copyrighted material.

5. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants has complied therewith.

6. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

7. Directing that Defendants account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

8. Awarding Plaintiff punitive, statutory, and exemplary damages as the court finds appropriate to deter any future willful infringement.

9. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

10. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

11. Awarding such other and further relief as the Court deems just and proper.

Respectfully submitted by:


*/s/ Amanda Ellen B. Clay, Esq.*
AMANDA ELLEN B. CLAY, ESQ.
Florida Bar No.  28808
THREE THIRTEEN LAW, PLLC
1101 E. Cumberland Ave., Ste 201H
PMB 604
Tampa, FL 33602
mandi@threethirteenlaw.com
docket313@gmail.com
Service@lawsprt.com
(813) 530-9849


## **VERIFICATION**

Pursuant to 28 U.S.C. Section 1746, I declare, certify, verify, and state, under penalty of perjury that the factual allegations contained in the foregoing Complaint are true and correct.

Executed on ___5/11/2020_____, by:



DocuSigned by:

*Maryann Harman*

MARYANN HARMAN