UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MUSIC WITH MAR, LLC,

     Plaintiff,

v.                     Case No.: 8:20-cv-1091-T-33AAS

MR. FROGGY'S FRIENDS, INC.,
and KATRINA WEBSTER

     Defendants.

_____/

**ORDER**

     This matter comes before the Court pursuant to Defendants Mr. Froggy's Friends, Inc. and Katrina Webster's Motion to Dismiss Plaintiff's Defamation Claim in the Second Amended Complaint (Doc. # 78), filed on October 30, 2020. Plaintiff Music with Mar, LLC responded on November 20, 2020. (Doc. # 82). For the reasons that follow, the Motion is denied.

**I.   Background**

     Maryann Harman is the sole member of Plaintiff Music with Mar, LLC ("MWM"). (Doc. # 77 at ¶ 5). MWM creates and licenses a curriculum of "brain-based" music workshops for young children and their families. (Id. at ¶¶ 8-10). MWM has distributed, marketed, and promoted the "Music with Mar" curriculum since at least 1994, and has spent considerable

time and energy cultivating the brand. (Id. at ¶¶ 12-18). To that end, MWM owns the "Music with Mar" trademark, issued by the United States Patent and Trademark Office on October 4, 2016. (Id. at ¶ 11).

In addition to the trademark registered with the government, MWM also claims common law trademark rights in the character "Mr. Froggy" and several logos bearing that name. (Id. at ¶ 21). MWM has incorporated the Mr. Froggy character into its workshops and uses the character to promote classes. (Id. at ¶¶ 21-26).

MWM licenses and distributes the registered "Music with Mar" trademark, as well as the unregistered Mr. Froggy character, to instructors around the world. (Id. at ¶¶ 16-17). Defendant Katrina Webster became a licensed instructor in 1998 and began teaching workshops in New York. (Id. at ¶¶ 27-28). In 2017, Webster expressed interest in taking on a larger, more managerial role in the company. (Id. at ¶ 29). Webster and Harman agreed that Harman would be in charge of recruiting and training new instructors. (Id. at ¶¶ 29-32). Webster created a new entity for this purpose, Defendant Mr. Froggy's Friends, Inc. (Id.).

MWM and Mr. Froggy's Friends entered into a licensing agreement wherein Mr. Froggy's Friends was permitted to use

and sublicense the registered mark "Music with Mar" and the unregistered marks involving Mr. Froggy. (<u>Id.</u> at ¶¶ 32-35). Under the agreement, MWM remained the sole owner of the registered and unregistered marks. (<u>Id.</u>). The agreement included several quality-control provisions to ensure instructors recruited by Webster conducted their workshops in a uniform fashion. (<u>Id.</u>). Per the terms of the license agreement, the agreement could be terminated if MWM gave Mr. Froggy's Friends a notice of default and the breaches were not cured within thirty days. (<u>Id.</u> at ¶ 59).

According to the second amended complaint, problems with the relationship arose immediately. (<u>Id.</u> at ¶ 36). MWM alleges that Webster allowed instructors to post unapproved content and advertisements, teach unapproved classes, and use unapproved materials in class, all while using MWM's trademarks. (<u>Id.</u> at ¶ 50). After a few months, Harman became concerned about the integrity of her brand. (<u>Id.</u> at ¶¶ 48-50). On January 13, 2020, MWM sent Mr. Froggy's Friends a letter outlining several breaches of the licensing agreement. (<u>Id.</u> at ¶ 50). Mr. Froggy's Friends allegedly did not cure these breaches, despite several reminders from MWM. (<u>Id.</u> at ¶ 57).

3

On May 2, 2020, more than thirty days after MWM notified Mr. Froggy's Friends of the breaches, MWM sent Mr. Froggy's Friends a termination letter indicating Mr. Froggy's Friends could no longer use the trademarked content. (Id. at ¶ 62). Mr. Froggy's Friends also sent letters to the instructors recruited by Webster and informed them they could keep teaching classes if they signed a new license agreement with MWM within fourteen days. (Id. at ¶ 64).

According to MWM, Mr. Froggy's Friends did not stop using the registered "Music with Mar" trademark nor the unregistered marks involving Mr. Froggy. (Id. at ¶¶ 65-68). Instead, Webster allegedly began telling instructors to "ignore any communication from [MWM]." (Id. at ¶ 67). MWM asserts that on May 3, 2020, Webster sent an email to fourteen instructors stating that "Webster was the only one who was 'legally' allowed to license instructors, implying that [MWM] was violating the law by doing so." (Id. at ¶ 125). That same day, Webster allegedly hosted an online video conference and told instructors that the license between MWM and Mr. Froggy's Friends "could not be terminated without a court order and that [the instructors] could continue teaching classes without permission from [MWM]." (Id. at ¶ 126).

In response, MWM filed the instant action against Mr. Froggy's Friends and Webster on May 11, 2020. (Doc. # 1). In the initial complaint, MWM alleged violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq. (Counts 1 through 6), violations of the Anticybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d) (Count 7), defamation (Count 8), violations of the Copyright Act of 1976, 17 U.S.C. §§ 101 et seq. (Count 9), and breach of contract (Count 10). (Id.). MWM filed an amended complaint on July 2, 2020, containing the same ten counts (Doc. # 37), which Mr. Froggy's Friends and Webster moved to dismiss. (Doc. # 48). After hearing oral arguments on the matter on October 9, 2020, the Court denied the motion to dismiss as to Counts 1 through 7, Count 9, and Count 10, but granted the motion as to Count 8 (the defamation claim). (Doc. ## 75, 76). The Court dismissed Count 8 without prejudice and granted MWM leave to amend. (Doc. # 76).

MWM filed a second amended complaint on October 16, 2020, (Doc. # 77), and Mr. Froggy's Friends and Webster again move to dismiss the defamation claim (Count 8). (Doc. # 78). MWM has responded (Doc. # 82) and the Motion is ripe for review.

## II.  **Legal Standard**

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the

light most favorable to the plaintiff. <u>Jackson v. Bellsouth Telecomms.</u>, 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. <u>Stephens v. Dep't of Health & Human Servs.</u>, 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

<u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). "The scope of review must be limited to the four corners of the complaint" and attached exhibits. <u>St. George v. Pinellas Cnty</u>, 285 F.3d 1334, 1337 (11th Cir. 2002).

## III. <u>Analysis</u>

Under Florida law, to state a claim for defamation, a plaintiff must allege "(1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on

the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." Bassler v. George Weston Bakeries Distrib., Inc., No. 3:08-cv-595-J-32JRK, 2008 WL 4724434, at *3 (M.D. Fla. Oct. 24, 2008) (citing Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803-04 (Fla. 1st DCA 1997)).

Additionally, a plaintiff pleading defamation "must set out the substance of each allegedly defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement." Bezeau v. Cable Equip. Servs., Inc., No. 14-24538-C1V, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015).

### a. **Particularity**

Mr. Froggy's Friends and Webster first argue that the defamation claim should be dismissed because MWM fails to allege any defamatory statement with particularity. (Doc. # 78 at 3). According to Mr. Froggy's Friends and Webster, the second amended complaint lacks the specificity necessary to put them "on notice of what they are required to defend against." (Id. at 4). MWM responds that it has "alleged its

claim of defamation with particularity" by including the specific dates the statements occurred. (Doc. # 82 at 1, 12).

The Court agrees with MWM that the second amended complaint identifies two statements with particularity. MWM asserts that on May 3, 2020, Webster sent an email to several instructors stating that Webster was the only one legally allowed to license instructors, thus "implying that [MWM] was violating the law by doing so." (Doc. # 77 at ¶ 125). MWM also alleges that on May 3, 2020, Webster hosted an online video conference and told instructors that the license between MWM and Mr. Froggy's Friends "could not be terminated without a court order and that [the instructors] could continue teaching classes without permission from [MWM])." (Id. at ¶ 126).

These allegations specifically identify the content of the disputed statements (that only Webster could license instructors and that instructors did not need to get permission from MWM to continue teaching), the speaker (Webster), the date the statements were made (May 3, 2020), the place of publication (email and online videoconference, respectively), and the third parties to whom the statements were made (the fourteen instructors identified in the second amended complaint). (Id. at ¶¶ 124-126). This is sufficient

8

to survive a motion to dismiss. See Fowler v. Taco Viva, Inc., 646 F. Supp. 152, 157–58 (S.D. Fla. 1986) ("To assert a viable claim for slander the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred.").

### b. **False and Defamatory Statement Concerning MWM**

Mr. Froggy's Friends and Webster also argue that the two aforementioned statements are Webster's legal opinions and conclusions about Mr. Froggy's Friends, not actionable "false" statements about MWM. (Doc. # 78 at 4–6). MWM responds that the second amended complaint lists several "false and misleading statements regarding [MWM] and its principal, Maryann Harman." (Doc. # 82 at 12).

The Court agrees with MWM that the second amended complaint satisfies the first element of a defamation claim. Regarding the falsity requirement, it is true that "statements of pure opinion are not actionable as defamation." Bassler, 2008 WL 4724434, at *3 (internal citations omitted). But "courts distinguish between pure expressions of opinion and mixed expressions." Id. Under Florida law, a "pure opinion" is a statement "based on facts which are set forth in the publication or which are otherwise

9

known or available to the reader or listener as a member of the public." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018). A mixed expression of fact and opinion occurs "when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the publication or assumed to exist by the parties to the communication." Id.

Whether a statement is one of opinion, fact, or mixed opinion and fact is a question of law. Id. at 1262-63. When making this assessment, "a court should construe statements in their totality, with attention given to any cautionary terms used by the publisher in qualifying the statement." Id. at 1263. The Court must also determine "whether an expression of opinion is capable of bearing a defamatory meaning because it may reasonably be understood to imply the assertion of undisclosed facts that justify the expressed opinion about the plaintiff or his conduct." Id.

Applying this standard, the Court finds that Webster's statements were mixed expressions of fact and opinion. MWM alleges that Webster made two statements concerning MWM: (1) an email to instructors that only Webster could license instructors, "implying that [MWM] was violating the law" by requiring instructors to sign a new licensing agreement, and

(2) a verbal statement to instructors via webinar that MWM could not terminate the licensing agreement, therefore instructors could "continue teaching classes without permission from [MWM]." (Doc. # 77 at ¶¶ 125-126).

These statements are not the kind of "loose, figurative, or hyperbolic language" that typically alert the listener to a pure opinion. See Milkovich v. Lorain Journal Co., 110 S. Ct. 2695, 2697, 2706 (noting that protection is accorded to "statements that cannot 'reasonably [be] interpreted as stating actual facts' about an individual"). Nor is the validity of a licensing agreement "subjective by definition." See Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1228 (11th Cir. 2002) (holding that defendant's statement that he "found [plaintiff's] performance on [a] contract to be inadequate" was a non-actionable opinion because it was "not capable of being proved false").

Rather, whether the licensing agreement was still in effect when Webster made these statements, or had already been terminated by MWM, depended on empirical proof like the terms of the agreement and objectively verifiable events like the January 13, 2020, default letter and the May 2, 2020, termination letter. See Turner v. Wells, 198 F. Supp. 3d 1355, 1370 (S.D. Fla. 2016), aff'd, 879 F.3d 1254 (11th Cir. 2018)

(finding a statement to be an opinion where the statement was not "subject to empirical proof" or an "objectively verifiable event").

As such, it would not have been clear to the instructors that Webster was expressing a purely personal opinion. See Greenbelt Co-op. Pub. Ass'n v. Bresler, 90 S. Ct. 1537, 1542 (1970) (finding that a statement was not defamation where "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole"). Instead, when taken in context, Webster's statements could have "reasonably [been] understood to imply the assertion of undisclosed facts." Turner, 879 F.3d at 1263. Specifically, the instructors could have reasonably understood Webster's statements to be based on undisclosed facts regarding the status of the licensing agreement and the state of the relationship between Mr. Froggy's Friends and MWM. Id. The Court therefore finds that Webster's statements were mixed expressions, which are "not constitutionally protected as pure opinion and may serve as the basis for a defamation claim." Bassler, 2008 WL 4724434, at *4.

MWM alleges that these mixed statements were objectively false because MWM had already terminated Mr. Froggy's Friends' licensing agreement. (Doc. # 77 at ¶¶ 50, 57, 62,

125-126). Accordingly, the Court is satisfied that the second amended complaint alleges falsity.

MWM also sufficiently alleges that these statements were defamatory. MWM claims that several instructors have "refused to do business with [MWM] based on false statements made by [Mr. Froggy's Friends and Webster]," "injur[ing] [MWM] in its trade or profession" and subjecting MWM to "distrust, ridicule, contempt, and/or disgrace." (Doc. # 77 at ¶¶ 128-130; Doc. # 82 at 12). Courts have found a statement to be defamatory where it "diminished [the plaintiff's] professional reputation and substantially impaired its ability to conduct business." Bassler, 2008 WL 4724434, at *4. Thus, taking all facts in the second amended complaint as true, MWM satisfies the first element of a defamation claim by alleging two false and defamatory statements concerning MWM.

### c. Remaining Elements

The Court is equally satisfied that MWM alleges the remaining elements of a defamation claim. MWM satisfies the second element — publication to a third party — by alleging that Mr. Froggy's Friends and Webster published the two statements to fourteen instructors. (Doc. # 77 at ¶ 124). Regarding the third element of fault, MWM alleges that Mr.

Froggy's Friends and Webster made the statements intentionally as part of a "campaign to disparage and defame [MWM]." (Id. at ¶¶ 64-66).

As for the fourth element of harm, according to the second amended complaint, Webster informed instructors that they could continue teaching classes without permission from MWM. (Id. at ¶ 126). This directly contradicted MWM's request that instructors sign a new licensing agreement within fourteen days. (Id. at ¶ 64). MWM alleges that several instructors, some of whom she worked with prior to the 2017 licensing agreement, have now "refused to do business with [MWM] based on false statements made by [Mr. Froggy's Friends and Webster]." (Doc. # 82 at 12). MWM thus alleges harm flowing directly from the publications, satisfying the fourth element.

In sum, the second amended complaint pleads each element of a defamation claim with the requisite particularity, making dismissal inappropriate.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendants Mr. Froggy's Friends, Inc. and Katrina Webster's Motion to Dismiss Plaintiff's Defamation Claim in the Second Amended Complaint (Doc. # 78) is **DENIED.**

14

(2)   Defendants' Answer to Count 8 of the Second Amended Complaint is due fourteen days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 30th day of December, 2020.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE